(13 Misc. Rep. 287.)

## PEOPLE v. McLAUGHLIN.

(Supreme Court, Special Term, Kings County. June, 1895.)

1. CRIMINAL LAW—STAY OF JUDGMENT—CERTIFICATE OF REASONABLE DOUBT.
    A certificate of reasonable doubt, to stay judgment pending appeal from a conviction (Code Cr. Proc. § 527), will be granted where, a stay of trial having been granted pending a motion for change of venue, which defendant could bring only on 10 days' notice to the district attorney, the court, on a few hours' notice, ordered defendant to proceed with the hearing of the motion, before expiration of the 10 days, and when defendant's senior counsel was away.

2. SAME—EVIDENCE.
    It is also ground for granting the certificate that, though a witness, who was unable to say whether it was M. (defendant) or B. to whom he paid money, was, on examination of a memorandum ("paid to M. for protection, per Sergeant B., ordinance officer, $50") for the purpose of refreshing his memory, unable to say, because of the equivocal nature of the writing, to whom he made the payment, the memorandum was admitted in evidence for the purpose of proving a conclusion therein contained, namely, that there was an illegal concert between them, and that payment to B. was payment to M. for his protection, or that payment to M. was for his protection, through B.

William W. McLaughlin was convicted of extortion, and now moves for a certificate of reasonable doubt, pending an appeal from a judgment of conviction. Granted.

Edward C. James and Abram I. Elkus, for the motion.

John R. Fellows, Dist. Atty., Daniel G. Rollins, and Bartow S. Weeks, opposed.

GAYNOR, J. The law does not cast upon me the duty of concluding whether error was actually committed in the defendant's case.

On the contrary, the statute (Code Civ. Proc. § 527) is that, if any assigned error give rise to "reasonable doubt whether the judgment should stand," it is my duty, without going further, to grant a certificate of reasonable doubt to operate as a stay of the judgment, pending appeal. I have such doubt, and, being unable to resolve it, after careful deliberation, I must unhesitatingly respond to the injunction which the law lays upon me, and allow the stay, without regard to my personal inclination. Whether this ruined defendant shall be imprisoned pending his appeal is insignificant, indeed, compared to the importance of maintaining a deliberate and orderly administration of criminal justice, and the necessity of preserving those individual rights which, while they shield the innocent and the unfortunate, do not protect the guilty. I have not merely this defendant's case in mind, but the case of every one hereafter to be tried for a criminal offense. I shall specify two alleged errors. The defendant was tried in the court of oyer and terminer. His first trial ended on Saturday, May 11, 1895, by a disagreement of the jury. The case was at once set down for another trial in the same court nine days ahead, namely, on Monday, May 20th. Counsel for defendant then decided to make a motion in the supreme court for a change of the place of trial to another county, on the ground that a fair and impartial trial could not be had in the county of New York. They prepared a voluminous record for that purpose, setting forth that the difficulty of getting impartial jurymen was so great that it took three weeks to get a jury on the first trial; that the deliberation of the jury was marred by unusual passion, those voting for acquittal reporting in open court that they were threatened with state's prison by those voting for conviction; that, immediately after the discharge of the disagreeing jurymen, their intelligence, honesty, and motives were assailed, in public meetings and elsewhere, all of which was reported in the newspapers; that, in addition, some newspapers joined in the attack, which was also leveled in advance agaist any jurors who should vote for acquittal upon the second trial; and the defendant also claimed that the learned judge who presided at his first trial, and was also to preside at his second, participated in these public discussions in a way adverse to a fair and calm consideration of his case, and calculated to deter jurymen from being independent. In this state of things, the defendant's counsel claimed that he had not had, and could not have, in the county of New York that deliberate, fair, and impartial trial which the law guaranties to every one. I need form no opinion as to the truth of these allegations. It is enough that they were by no means light or frivolous, and that defendant was entitled to have them calmly heard; for the law, taught by the experience of the past, had wisely so provided. From the irregular and disorderly trial of Jesus down to the present time history in almost every generation affords instances of trials conducted without due calmness and attention, in which sometimes the innocent and sometimes the guilty were convicted, but, invariably, in either case, with the like effect in the end that the conviction was generally deemed unjust, and proved more demoralizing and detrimental to social order than acquittal would have been. It is a maxim of manliness

and healthy human nature, as old as the human race, that one who cannot be convicted by fair play should not be convicted at all. The defendant having decided, as was his unquestionable legal right, to move the supreme court to change his place of trial, what followed? He was confronted with a difficulty; for, while the statute was explicit that he could bring on such a motion only "upon notice of at least ten days to the district attorney" (Code Cr. Proc. § 346), his second trial had been set only nine days ahead, as has been seen, and would, therefore, supersede his motion, and make it useless. But the law did not leave him in such evil case, for it provided that any justice of the supreme court might grant a stay of the trial until the motion should be heard and decided. Code Cr. Proc. § 347. By the exercise of diligence, the defendant's attorneys had the record necessary to the motion ready in four days, viz. on Friday, May 17th; and, regularly presenting the same to a justice of the supreme court on that day, they obtained of him the temporary stay of the trial which the law allowed until the motion should be heard, viz. on Monday, June 3d. The following morning, viz. Saturday, copies of the motion papers, including the stay and notice of motion, were served upon the district attorney. The defendant had acted strictly in accordance with law. He could not have noticed his motion for any day prior to the day set for the trial; for the statute, as has been seen, required that he should give a notice of motion of not less than 10 days. On the following Monday morning, however, at the unusual and irregular hour of 6 o'clock, the district attorney caused to be served upon the defendant's attorney an order requiring the defendant to show cause at 10:30 o'clock that same morning, before the special term of the supreme court in New York City, why the defendant's motion to change the place of trial should not then and there, "forthwith," proceed and be heard. The senior counsel for defendant was under engagement to be before the court of appeals at Albany on that day, and went there. The junior counsel appeared before the supreme court at the hour required, and, submitting affidavits bearing evidence of the unseemly haste in which he had been forced to prepare them, objected to the court proceeding, and, denying its jurisdiction to do so, asked that a time be set to argue the question of jurisdiction. The court refused the request, overruled every objection, and required the defendant to proceed at once to present to it his motion to change the place of trial. This his counsel refused to do. The court thereupon made and entered an order to the effect that the motion was heard and denied, and vacating the stay, but reciting the refusal of defendant to make the motion before it; and thereupon the court of oyer and terminer, which had awaited the outcome, immediately commenced the trial of the defendant, against the objection of his counsel that the supreme court had acted without jurisdiction, and that, therefore, the stay of the trial was still in force, and the trial could not be had.

I have a reasonable doubt of the validity of this precipitate proceeding in the supreme court. If it is to be allowed in this defendant's case, then it can be repeated in any one's case. It is quite as important that justice appear to be done as that it be done. It is impor-

tant that crime should be punished, but far more important that the rights of the individual should be held inviolable; for that alone is all that stands between him and tyranny, whether executive or judicial. If the order of the supreme court was void, then the stay was in force when the court of oyer and terminer tried the cause. I do not see how a court may force a party to bring on a trial or application of any kind within less time than he has legally noticed it for, unless by express statutory authority to shorten the time, which did not exist in the present instance. It might as well try to make a party bring on a trial or application that he had not given notice of at all. The notice was shortened in this case by the aforesaid order of the special term of the supreme court, upon the ground that the public interest required that there be no delay of the trial of defendant. If that be a valid ground, then a notice of trial or of motion in any case involving public interest may be shortened or disregarded by a court. It seems to me the learned district attorney mistook his course, and that the court acted without jurisdiction. The way for the district attorney to prevent delay of the trial was plain. The law had not left it in the power of the defendant to delay the trial at will. He had to get a stay pending his motion in order to delay the trial at all; and the district attorney had the right to apply to the judge who had granted the stay, to vacate it, unless the defendant would stipulate, as an alternative, to argue the motion in a shortened time. The like is often done in civil causes in respect of both notices of trial and of motion. But, that a court has inherent jurisdiction to shorten at will notices essential to give it jurisdiction I cannot believe. There was no due process of law by which the special term of the supreme court was able to do what it assumed to do in this case.

Another assigned error raises a grave question. The indictment was for the extortion of $50 from one Seagrist. To make out the crime it became necessary for the prosecution to prove a continuing illegal concert between the defendant and his ward man, Burns, to extort money; for the acts necessary to constitute the particular crime for which defendant was being tried were not all committed by defendant personally, but, on the contrary, some, or, as the prosecution finally claimed, all, of them, were done by Burns. This illegal concert being established, then the act of either one was the act of the other, and in that way the defendant could be convicted. Evidence had been produced from which the jury could have found that the illegal relation existed. Next it was proved that Burns stopped the work of pulling down a building which Seagrist was engaged in, and told him he could not go on with it till he saw the captain, namely, the defendant. This was the coercion used to extort the money. Seagrist says he went to the station to see the captain, but he was not in. The next thing to prove was that the money was paid. Seagrist swore positively that he paid $50 to either the defendant or Burns, but that he could not remember which. His dubiety was upon this point only. He then testified that he made a true memorandum of the occurrence at the time of payment, and produced it. Being requested to look at the memorandum, to refresh

his memory, he did so, and then said: "I have no distinct recollection, by looking at the book, to whom I paid it, because it was a double entry." The memorandum was then offered and received in evidence, against the objection of defendant's counsel. It is as follows: "November 21, 1891. Material. Paid to McLaughlin for protection, per Sergeant Burns, ordinance officer, $50." Seagrist said: as we have seen, that he could not tell, from this memorandum, to which one he paid the money, because it was a "double entry," not referring to double-entry bookkeeping (for no such thing was before him), but meaning that the entry was double in meaning, or equivocal. And so the memorandum seems to be; for who can say from it, any more than Seagrist could, whether it conveys the statement that the money was paid to McLaughlin per or through Burns for protection, or paid directly to McLaughlin for protection to be given per or through Burns? It follows that this delphic memorandum was not competent to prove to which one the money was actually given by Seagrist. That was the only point upon which his memory failed, and the memorandum could not be competent to prove anything except something which the witness could not recollect. Bank v. Madden, 114 N. Y. 280, 21 N. E. 408; 3 Rice, Ev. 100. He remembered positively that he paid the $50 to one or the other, so that the memorandum could not be received to prove that. But, in another aspect, it seems that the memorandum could not be legal evidence. The rule allowing an original written memorandum of a fact to be used as evidence of such fact, in the absence of recollection of the fact by the person who made the memorandum, relates only to memoranda of facts, and not to memoranda of inferences or conclusions. The memorandum in question is of a conclusion. It contains a conclusion that an illegal concert existed between McLaughlin and Burns; that payment to Burns was payment to McLaughlin for his protection, or else that payment to McLaughlin was for his protection through Burns. Indeed, it contains a statement of a conclusion that the very crime for which the defendant was being tried was committed. It was competent for Seagrist to testify that he paid the money to Burns, but not competent for him thereupon to state the conclusion that such payment amounted to payment to McLaughlin. Yet that is what this memorandum was interpreted to state by the prosecution. If one could make a written memorandum of his conclusions, and in that way afterwards have them received in evidence, no one would be safe in liberty or property. There would be no end of fabricated memoranda. Even an original memorandum of a simple fact is received in evidence with hesitation, and only from necessity; and such caution is necessary, as our highest court has said, "until the moral infirmity of human nature becomes exceptionally less than it yet has." 114 N. Y. 285, 21 N. E. 408.

The motion is granted. Ordered accordingly.